48 CCPA

**Application of Erwin KASEMANN and Wilhelm Ropke.**

**Patent Appeal No. 6625.**

United States Court of Customs and Patent Appeals.

Jan. 13, 1961.

Frank J. Wille, New Rochelle, N. Y., for appellants.

Clarence W. Moore, Washington, D. C. (Raymond E. Martin, Washington, D. C.,

of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Judges, and Judge WILLIAM H. KIRKPAT-RICK.[1]

WORLEY, Chief Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the examiner's rejection of claims 12 through 17, 19, and 21 through 24 in appellants' application for a patent for a motor vehicle lighting system as unpatentable over certain prior art.

Counsel for appellants stated at oral argument that all the claims would stand or fall with claims 12 or 22 which read:

"12. In a lighting system supported by a motor vehicle for illuminating a road area in front thereof, the combination of first means for producing a substantially non-polarized bright or up beam of light, second means for producing a dim or down beam of substantially polarized light, said second means being at least optically separated from said first means and said down beam being made up of divergent rays which are inclined at a downward angle with respect to the direction of travel of said vehicle; and operating means connected to said first and second means for alternately energizing said first means and said second means, said down beam being the only beam illuminating a road area in front of said vehicle when said second means is energized.

"22. In a lighting system supported by a motor vehicle for illuminating a road area in front thereof, the combination of first means for producing non-polarized bright or up beam of light[,] second means for producing a dim or down beam of substantially polarized light, said second means being at least optically separated from said first means and including a reflector, a light source placed substantially at the focus of said reflector, a polarizer placed in front of said light source and intercepting the light beam produced by said light source and said reflector, and means placed between said light source and said polarizer for distributing said last mentioned light beam over a road area which terminates at a shorter distance from said vehicle than the road area over which said bright beam is distributed; and operating means connected to said first and second lighting means for alternately energizing said first means and said second means."

The references relied on are

Grey    2,493,192    January 3, 1950.

Chubb "Polarized Light for Motor Vehicle Lighting"

Transactions I.E.S., May 1937, pages 505–543.

The claims relate to an antiglare headlight system for automobiles having a combination of bright or up beam producing head lamps emitting rays of unpolarized light, and a separate dim or down beam producing head lamp or lamps, emitting divergent rays of polarized light. The system is provided with a conventional dimming switch allowing the operator to alternately energize either light source.

The Grey patent, the basic reference, relates to a headlight system utilizing at least one source of polarized light as an auxiliary to the usual headlamps. The polarized light is intended primarily for use in meeting oncoming cars, and is switched on by lowering a visor preferably made of light polarizing material, through which the driver looks, thereby avoiding the glare of the opposing headlights. It is stated that the auxiliary polarizing headlamps are "as bright as

1. United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge O'CONNELL, pursuant to provisions of Section 294(d), Title 28, United States Code.

ordinary up beam headlights" and "will light up a portion of the road ahead at least equal to that illuminated by the up beam headlights." From the following it is clear that a separate polarizing light source is intended and that it may be used as the only light in passing.

"* * * Thus, the original lamps on the car would be left unchanged and an auxiliary unit, readily mounted on a bumper, cross bar or similar unit at the front of the car, is added thereto. It is, moreover, to be noted that circuits and lighting equipment wherein a completely polarizing lighting headlight system comprising one, two, or more polarizing lighting elements are adapted by appropriate circuits and auxiliary apparatus to effect a *complete change of lighting* from unpolarized lighting to polarized lighting during the passing period *are not to be excluded.*" (Emphasis added.)

In the Chubb article the author describes, among other things, a system of vehicle lighting using polarized light, and recommends that all cars be ultimately equipped with viewing screens having substantially complete polarization and with headlamps projecting "strong and high lights," "almost completely polarized."

At the end of the Chubb article there is a discussion which includes a suggestion by Roper to confine the polarized light to a passing beam only. He states in part:

"That brings up the question whether with the ideal system, using polarized light, we can have just one beam. I think that polarization certainly offers interesting possibilities, but perhaps the best compromise would be to apply it, if possible, to a passing beam only. Of course that is where we really need it to take care of the problem of glare interference. If it were possible to polarize only the passing beam we could put a lot of light down the center of the road and much more along the right side, without worrying about the headlamp becoming misadjusted and causing serious glare. Then for the open road, provide another unpolarized beam with the same wattage. This would of course provide considerably higher candlepower and hence sufficient light for really safe seeing."

The board, in affirming the examiner, held that the claims were unpatentable over Grey and Chubb, and found that Grey constituted a "full anticipation of using a pair of 'high beam' normal lights and a pair of polarized passing lights, structurally separate," plus the "combination in which no unpolarized lights are used in the 'passing light' condition." In addition, the board referred to that section of the discussion following the Chubb article containing the suggestions by Roper as further evidence that it is old to use polarized light as the only light in passing. The board felt that the reference to "passing beams" contained therein was not a clear disclosure of the use of polarized light in low beams, but nevertheless held that "persons of ordinary skill and knowledge of the development and laws governing lighting would be led to forming the passing lights as 'down beam' lights without invention."

Appellants urge that neither the Grey patent nor the Chubb article discloses or suggests polarization of low beams in alternation with high beams.

We have given full consideration to that contention, together wtih the authorities cited by appellants, but agree with the conclusion reached by the board.

All that Grey lacks to anticipate appellants' claims is the downward direction of his passing beam of polarized light and the use in that beam of divergent rays. In the discussion following the Chubb article Roper clearly suggests the use of polarized light for passing and unpolarized light for the open road. While it is true that Roper does not clearly define his use of the term "passing beam," a reasonable interpretation

of that expression is a down beam light. We see nothing in his remarks to support a contrary conclusion. It is common knowledge that for many years cars have been equipped with dim or down beam lights for use in passing. Roper's reference to a "passing beam" clearly suggests a dim or down beam and it would be obvious to one skilled in the art to adapt Grey's polarized passing lamp or lamps in such a way as to produce a beam of polarized light with divergent rays directed at an angle to the road which would conform with normal down or dim beam lighting.

We find none of the errors alleged by appellants. The decision is affirmed.

Affirmed.